## Lobianco v. Property Protection, Inc.

*Robert J. Brown,* for plaintiff.
*Michael J. Brillhart,* for defendant.

BUCKINGHAM, *J.,* August 22, 1978—Plaintiff sued defendant in two counts. Count 1, in assumpsit, alleges that plaintiff purchased a burglar alarm system from defendant which was installed in her home by defendant. About one and one-half months after the installation, while plaintiff was away from her home, burglars broke into the home and stole $35,815 worth of jewelry. Plaintiff alleges that defendant's system failed to operate properly and defendant thereby breached the express warranties in the proposal of defendant, dated September 25, 1975, which was accepted by plaintiff, and also breached the Uniform Commercial Code of April 6, 1953, P.L. 3, implied warranties of merchantability, 12A P.S. §2-314, and of fitness for a particular purpose 12A P.S. §2-315.

In count 2, in trespass, plaintiff seeks to come within the strict liability theory contained in section 402A of the Restatement, 2d, Torts, by alleging that defendant sold the system in a defective condition which was unreasonably dangerous to plaintiff and her property. Plaintiff seeks to recover the full value of the jewelry in the sum of $35,815.

Defendant's answer denied all of the foregoing and also seeks to limit recovery by plaintiff, if any, by virtue of a limiting clause contained in the proposal which provided:

"Alarm system equipment installed by Property Protection, Inc. is guaranteed against improper function due to manufacturing defects or workmanship for a period of 12 months. The installation of the above equipment carries a 90-day warranty.

*The liability of Property Protection, Inc. is limited to repair or replacement of security alarm equipment and does not include loss or damage to possessions, persons or property."* (Emphasis supplied.)

Plaintiff's depositions were taken and filed and thereafter defendant filed a motion for summary judgment on the grounds that: (1) there is no genuine issue as to any material facts, (2) plaintiff in her deposition admits she cannot establish a breach of any of the warranties or that the system failed due to any action or lack of action on the part of defendant, (3) plaintiff admits in her depositions that she cannot establish that the system was sold in a defective condition unreasonably dangerous to plaintiff or her property, and (4) plaintiff's recovery, if any, is limited to the amount contained in the "limitation of damages" clause in the proposal.

It is to be noted that the complaint is not founded on negligence but only on the breach of the express and implied warranties and the strict liability theory of section 402A of the Restatement, 2d, Torts.

First of all, we disagree with defendant's contention that there is no disagreement as to the facts or that plaintiff admits that she cannot establish that the system failed due to the action or inaction of defendant. Plaintiff deposed that when she left her home on the night in question she was positive she had activated the system, that when activated a red light would light up on the control panel of the system and that when she returned after the burglary had occurred, the red light was not lit and she, therefore, knew something was wrong. This testimony, we believe, is sufficient to present a fac-

tual issue to the jury as to whether defendant's system was operable or workable.

There is, however, a causation issue in the case. We disagree with defendant's contention that defendant's alleged breach of the warranties was not the proximate cause of plaintiff's loss, but was rather caused solely by the intervening acts of the burglars. Defendant relies on Nirdlinger v. American District Telegraph Company, 245 Pa. 453, 91 Atl. 883 (1914), for this proposition. It is true that the Nirdlinger court held that the negligence of the supplier of the burglar alarm system was not the proximate cause of plaintiff's loss but instead was the action of the burglars, but the court also said that on those facts plaintiff could recover on a breach of contract theory.

In any event, we concur with the statement of the court in Raewin Clothes, Inc. v. Altronics, Inc., 5 D. & C. 3d 342 (Bucks County, 1978), that the Nirdlinger proximate cause doctrine has been replaced by sections 448 and 449 of the Restatement, 2d, Torts, which provide:

"§448. Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

"§449. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

We believe the present case falls squarely within these sections of the Restatement. In so holding, we realize that the court in Trexler Orchards, Inc. v. Altronics, Inc., 51 D. & C. 2d (Lehigh County, 1970), reached the opposite conclusion.

We think that Wedner v. Fidelity Security Systems, Inc., 228 Pa. Superior Ct. 67. 307 A. 2d 429 (1973), buttresses our conclusion. There the court permitted recovery for the negligent breach of a contract to supply an adequate burglar system without even referring to Nirdlinger.

Before reaching the issue of the viability of the "limitation of damages" clause, we wish to dispose of plaintiff's reliance on section 402A of the Restatement. This section provides:

"§402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical* harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis supplied.)

It is immediately apparent from the foregoing language that this section does not apply in the present case. Defendant's product was not dangerous and did not cause any physical harm to plaintiff or her property. A reading of the comment to the section supports the conclusion that the only products which come under the section are those which cause physical harm, such as food which causes illness, bottles which explode or a defective automobile tire which causes an accident. For example, in the present case, if the system had defective wiring which caused a fire, defendant might well be liable to plaintiff for the fire loss to her property.

Finally, with respect to whether or not plaintiff is limited in her recovery, we hold that plaintiff is bound by the "limitation of damages" clause in the proposal submitted by defendant and she may, therefore, recover only the amounts referred to therein and is precluded from recovering the consequential loss of the value of the jewelry stolen. The situation in this case is governed by 12A P.S. §2-719(3) which provides:

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

In Magar v. Lifetime, Inc., 187 Pa. Superior Ct. 143, 144 A. 2d 747 (1958), plaintiff engaged defendant who was in the "home improvement business" to apply plastic plastering to the exterior walls of the plaintiff's cement block house for $1,100. Plaintiff alleged that the material supplied by defendant was not in conformance with the samples, was improperly applied and that defendant failed to perform the work in accordance with the contract. The jury awarded plaintiff the amount of the contract price, $1,100, plus $220.84, which represented plaintiff's financing charges and interest owed the bank. The Superior Court reversed the judgment on two grounds. First, on the basis that plaintiff failed to prove his damages and second, and more importantly, plaintiff was limited in his recovery by his contract. The court stated at page 145:

"The contract by its terms specifically stated the extent of the contractor's liability for defective performance, in this language: 'Contractor guarantees that all materials furnished by it will be of standard quality free from defects and will be installed or applied in a good and workmanlike manner for a period of one year from date of installation. *The liability of the Contractor for defective material or installation under this guarantee is hereby limited to the replacement or correction of said defective material and/or installation, and no other claims or demands whatsoever shall be made upon, or required to be allowed by the Contractor.'* The limitation of liability for damages thus agreed upon in the contract, was valid and enforceable. Restatement, Contracts, §339, comment (g); 38 C.J.S. Guaranty, §56. By way of analogy cf. Uniform P.S. §2-719." (Emphasis supplied.)

Comment (g) provides: "An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto. Such a contract does not purport to make an estimate of the harm caused by a breach; nor is its purpose to operate in terrorem to induce performance."

As can be seen, the limitation of damages clause in Magar substantially parallels the one in the present case.

In Wedner, supra, the court in a three to three decision upheld what it concluded was a limitation of damages clause in a burglar alarm system contract and held that the clause was not unconscionable under 12A P.S. §2-719(3).

We conclude in the present case that plaintiff is bound by this section of the Uniform Commercial Code and that the limitation of damages clause is not unconscionable under the section or the circumstances of the case.

The only argument that plaintiff has advanced against the limitation of damages clause is that defendant is precluded from raising the issue because the clause does not mention "merchantability" and is not conspicuous as required by 12A P.S. §2-316(2). This argument is irrelevant. Defendant is not seeking to exclude the warranties but rather is simply attempting to limit its liability, despite the warranties.

We also point out that defendant does not seek to exculpate itself from all liability and we accordingly hold that the principles of law pertaining to

exculpatory clauses as set forth, for example, in Zimmer v. Mitchell and Ness, 253 Pa. Superior Ct. 474, 385 A. 2d 437 (1978), and Employers Liability Assurance Corporation v. Greenville Business Men's Association, 423 Pa. 288, 224 A. 2d 620 (1966), do not apply in this case. In those cases the court said that the test for determining the validity of exculpatory clauses, which admittedly are not favored in the law, are that the contract must not contravene a policy of the law, they must be contracts between individuals relating to their private affairs, each party must be a free bargaining agent, not simply one drawn into an adhesion contract, with no recourse but to reject the entire transaction, the agreement must be strictly construed and against the party asserting it and that the agreement must spell out the intent of the parties with the utmost particularity and must show the intent to release from liability beyond doubt by express stipulation and no inference from words of general import can establish it.

As we have indicated, limitation of damages clauses are treated differently by the courts from exculpatory clauses. Even if these latter principles did apply we believe that the intent of the parties in the present case is clearly set forth in the limitation of damages clause so as to limit the liability of defendant for whatever reason, whether or not expressed in the clause and whether based on negligence, breach of warranty or any other theory.

This may seem a harsh result, but similar results have been reached all over the country. See, for example, Better Food Markets Inc. v. American Dist. Tel. Co., 253 P. 2d 10 (1953).

In view of the foregoing, we shall enter an order dismissing defendant's motion for summary judgment but limiting plaintiff's recovery to the terms of

the limitation of damages clause set forth in the proposal.

## ORDER

And now, August 22, 1978, defendant's motion for summary judgment is dismissed but plaintiff's recovery shall be limited to the amounts to be determined under the limitation of damages clause set forth in the proposal of September 25, 1975, hereinabove referred to. Since those amounts will obviously be under the arbitration limits, it is directed that this matter be referred to a board of arbitration.

An exception is granted to plaintiff.